UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ALAN SANDERSON, ERLE BOSWELL, DONALD CLOE, and DAVID LANNING<br><br>On Behalf of Themselves and<br>All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>UNILEVER SUPPLY CHAIN, INC.,<br>a subsidiary of CONOPCO, INC.<br><br>Defendant. | Case No. 10-CV-00775-FJG |

# ORDER

Currently pending before the Court is the parties' Joint Motion for Approval of Settlement (Doc. # 73) and plaintiff's Motion for Attorney Fees (Doc. # 75).

## I. BACKGROUND

Plaintiffs are individuals who are employed by Unilever as hourly production workers at Unilever's food production facility in Independence, Missouri. On August 6, 2010, plaintiffs filed a three count Complaint on behalf of themselves and other similarly situated employees. Plaintiffs sought relief on a collective and class wide basis relating to defendant's alleged practice and policy of not fully compensating its employees for time spent donning and doffing required protective gear and equipment and for walking time before and after their shifts and also for implementation of a rounding policy. Unilever filed its Answer on October 6, 2010 and denied plaintiffs' allegations. Additionally, Unilever raised numerous affirmative defenses and argued that the time spent by plaintiffs "donning and doffing" clothing at Unilever was non-compensable

under 29 U.S.C. § 203(o) due to a long-standing custom and practice of employees not being compensated for such time under one or more collective bargaining agreements. The parties engaged in written discovery and the depositions of the four named plaintiffs were also taken.  After reviewing and analyzing the information and documents exchanged through discovery, the parties began settlement discussions and decided to engage in formal mediation in late June.  After participating in mediation, the parties reached an agreement to settle plaintiffs' claims.  The parties have filed a Joint Motion for the Approval of the Settlement and plaintiffs' counsel have filed a separate Motion for Attorneys' Fees & Costs.

## II. STANDARD

**Fair Labor Standards Act Certification**

> Section 7 of the FLSA mandates that an employer may not subject non-exempt employees to a work week in excess of 40 hours unless the employee is compensated for her overtime with additional pay of at least one and one half times her regular hourly wage.  29 U.S.C. § 207.  The Act also provides that any employer who violates this restriction 'shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.' 29 U.S.C. § 216(b).  An action to recover the overtime and liquidated damages may be maintained 'by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.' Id.

Young v. Cerner Corp., 503 F.Supp.2d 1226, 1228 (W.D.Mo. 2007).  In Graham v. Town & Country Disposal of Western Missouri, Inc., No. 4:10-CV-00551-NKL, 2010 WL 5173181 (W.D.Mo. Dec. 14, 2010), the Court noted that "[f]ederal courts have used varying standards to determine whether potential opt-in plaintiffs are 'similarly situated' under § 216(b). . . .Though the Eighth Circuit Court of Appeals has not indicated which

2

standard should be used, a majority of the district courts in the Eighth Circuit use the two-step analysis adopted in Mooney v. Aramco Services Co., 54 F.3d 1207 (5th Cir.1995)." Id. at *2 (internal citations omitted). The Court noted that under this approach, plaintiff will first move for conditional certification for notice purposes early in the litigation and the standard that courts apply is a lenient one. At the second stage of the process, the defendant may then move to decertify the class after the close of discovery. Id.

### III. DISCUSSION

In the instant case, plaintiffs did not move for conditional certification before they agreed to settle the case. The Court requested that the parties provide supplemental briefing on the issues of: 1) the propriety of plaintiffs obtaining and filing eighty-two "Consent to Join" forms from individuals who purported to be "similarly situated" to the named plaintiffs, prior to the Court conditionally certifying the case as a collective action and approving notice to the class and 2) the propriety of the parties' request for approval of the settlement when there has been no conditional certification.

Plaintiffs' counsel state that they did not provide any written or any other type of notice of the FLSA lawsuit to putative opt-in plaintiffs. Rather, the Named Plaintiffs, who were each long term employees discussed the case with their co-workers and obtained the executed consents to join the action from their co-workers. Additionally, plaintiffs state that courts have allowed "consent to join" forms to be filed in cases prior to the cases being conditionally certified. See Flores v. Metro Valley Painting Corp., No. CV-06-2675-PHX-PGR, 2008 WL 4541416 , *1 n.4 (D.Ariz. Oct. 8, 2008)("the FLSA does not prohibit employees from signing consent to join forms prior to the entry of a court

3

order facilitating notice of the collective action.") and Piper v. RGIS Inventory Specialists, Inc., No. C-07-00032(JCS), 2007 WL 1690887, *6 (N.D.Cal. June 11, 2007)("courts generally allow opt-ins to be filed at any time in the action . . ."). Plaintiffs' counsel also state that the proposed notice of the settlement that will be sent to the current opt in plaintiffs as well as the remainder of the defendant's current and former employees who are similarly situated will provide details of the claims, the terms of the settlement and the employee's rights regarding the settlement.

With regard to the second issue that the Court raised, plaintiffs' counsel states that a case need not be conditionally certified before the parties reach a settlement. However, as noted by the Court in McCaffrey v. Mortgage Sources, Corp., No. 08-2660-KHV, 2011 WL 32436, *2 (D.Kan. Jan. 5, 2011), "[w]here parties settle FLSA claims before the court has made a final collective action ruling, the court must make some final class certification finding before it can approve a collective action settlement."

### A. Class Certification

As discussed above, in considering whether plaintiffs are similarly situated for purposes of certification under the first step, the standard is lenient one. Once the parties have reached the second step, the court makes a factual determination on whether the plaintiffs are similarly situated. Brennan v. Qwest Communications Inter., Inc., Civil No. 07-2024 ADM/JSM, 2009 WL 1586721 (D.Minn. June 4, 2009). "In deciding whether plaintiff's are similarly situated, a court considers several factors, including (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which

4

appear to be individual to each plaintiff; and (3) other fairness and procedural considerations." Id. at *3.

With regard to the first factor, all of the plaintiffs are hourly production workers who worked in defendant's food production facility in Independence, Missouri. There is a distinction made in the Settlement Agreement for the six different departments, based upon the number of minutes of uncompensated time - ranging from 2 minutes to 5.5 minutes. However, other than this fact, the Court finds no other differences amongst the class of plaintiffs. In the motion for approval of the settlement, defendant discussed defenses which were raised during the litigation. However, these defenses would have applied to the entire class and not to individual plaintiffs. Finally, the Court also finds that other fairness and procedural considerations such as "the number of plaintiffs in this case and effectiveness of allowing them to pool their resources for litigation, also weigh in favor of collective treatment." Burkholder v. City of Fort Wayne, 750 F.Supp.2d 990, 994 (N.D.Ind. 2010). Accordingly, the Court hereby determines that this case should be finally certified as a collective action under the FLSA. The Court will now proceed to analyze the settlement of the class action.

### B. Analysis of the Settlement

> [I]n the context of a private action to recover unpaid wages, a district court may enter a stipulated judgment after scrutinizing the settlement for fairness. . . . If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.

McCaffrey, 2011 WL 32436 at * 3 (internal citations omitted).

> [C]ourts entertaining a proposed settlement in a § 216(b) case must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. . . . Courts have also regularly applied the same 'fairness' factors applied to a proposed settlement of a Rule 23 class action by analogy to a proposed settlement of a § 216(b) collective action to determine whether the proposed settlement is fair and reasonable. . . . Those factors are the following: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

Moore v. Ackerman Investment Co., No. C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009)(internal citations omitted).

In the Motion for approval of the settlement, counsel state that during almost a year of litigation, they engaged in extensive factual investigation regarding plaintiffs' claims including written discovery, they exchanged thousands of pages of documents and data and defendants took the depositions of the four named plaintiffs. Thus, the Court finds the parties engaged in substantial discovery before arriving at the proposed settlement. As to the second factor, the parties state that they analyzed the application and scope of the Section 203(o) defense and the parties' risks related to the uncertainty of whether or not this defense would be successful. Defendant took the position that the defense applied and that it had become a "custom and practice" not to pay employees for donning and doffing protective gear. Plaintiffs however alleged that despite this defense, they would still be entitled to post-donning pre-shift walking time, pre-doffing, post-shift walking time and post-donning pre-shift waiting time. The parties also acknowledged that there was conflicting caselaw on this issue. The parties also

6

analyzed the relative risks of the de minimis defense concerning the amount of daily walking and waiting time at issue. The parties state that the settlement resulted only after reviewing defendants extensive documents relating to its compensation policies and time clock records for approximately one hundred opt in plaintiffs, analyzing the nuances and applications of the Section 203(o) defense and the de minimis defense, deposing the four named plaintiffs and engaging in formal mediation. As to the third factor, the Court finds no evidence that there has been any fraud or collusion in this case. The Court also finds that class counsel are experienced in this area and have represented plaintiffs in other FLSA cases. Plaintiffs' counsel state in the Motion for Approval, that they "believe the settlement is fair, reasonable and adequate." (Joint Motion, p. 12). Additionally, the four named plaintiffs have also signed the Settlement Agreement, indicating their approval of the terms of the Agreement. With regard to plaintiffs' chances for success vs. the amount of the settlement, plaintiffs' counsel stated: "[i]f any of Plaintiffs' claims for uncompensated pre-shift and post-shift time were ultimately found to have merit, and the case were certified as a collective action, Defendant would be faced with the prospect of a monetary verdict in favor of Plaintiffs, as well as an obligation to pay litigation fees and costs incurred by Plaintiff and Defendant. If Defendant's arguments were correct, then Plaintiffs would receive no recovery of any kind." (Suggestions in Support of Motion for Approval of Settlement, p. 8). Plaintiffs' counsel states that the settlement is comprised of a weekly damages formula which includes department specific minutes of daily damages, multiplied by an average overtime rate of class members of $30 per hour (i.e. $.50 per minute), multiplied by five shifts per week, multiplied by 62 percent of each person's eligible work

7

under the applicable statue of limitations with a maximum of 2 years and 46 weeks, and a minimum of 2 years, with such damages multiplied by 1.4 to account for the potential for liquidated damages. Plaintiffs' counsel state that the settlement will provide plaintiffs with the certainty of the monetary payment, now as opposed to having to wait a significantly longer period of time if the case were to go to trial and face the possibility that their might be no recovery if their claims were ultimately proven to be unsuccessful.

Although plaintiffs' counsel believed that their claims had merit, they recognized that they also faced significant obstacles, including overcoming the Section 203(o) defense and the de minimis defenses as well as the prospect of a jury trial and the difficulty in proving the nature and extent of their damages. Defendant has agreed to pay a total of $ 257,580.00, exclusive of attorneys' fees and costs. Each of the four named plaintiffs will receive an award of $240.00 for acting as a class representative. The remainder of the class members will be paid according to the formula described above, which is based in part on the number of weeks the class member worked in a particular department during the applicable opt-in period. The Court finds that the settlement is reasonable based on the chances of success when weighed against the risks plaintiffs faced by continuing the litigation.

### C. Motion for Attorneys' Fees & Costs

Plaintiffs have also filed a Unopposed Motion for Approval of Attorneys' Fees. Plaintiffs state that during mediation the parties negotiated attorneys fees and costs as part of the settlement. Plaintiffs are seeking the award of $103,032.00 as attorneys' fees and costs incurred in prosecuting this matter and administering the settlement fund. Plaintiffs state that they have incurred costs of $3,434.29 in this matter. The

8

various costs are listed in Exhibit A, attached to the Motion for Approval. Plainitffs seek reimbursement for costs including: filing fees, meals, mileage reimbursement, transcript costs and the mediation fee. Plaintiffs have also agreed to provide for the services of Claims Administrator in order to manage the claims of the class members. This cost for this service is $16,000.00. Thus, the amount of attorneys' fees which plaintiffs' counsel are requesting amounts to: $83,597.71. Plaintiffs state that the gross amount of attorneys' fees and costs amounts to 40 percent of the settlement fund. However, they state that the effective amount of attorneys' fees excluding the $16,000.00 for the Claims Administrator services is 33.78% of the settlement fund. Plaintiffs state that this amount is in line with recent attorneys' fee awards in other FLSA cases in this area. Plaintiffs' counsel state that the lodestar method of calculating fees is often used as a way to double-check the reasonableness of the percentage of the fund fee request. For the purposes of this calculation, plaintiffs' counsel provided the names of the attorneys and paralegals who worked on the case, the number of hours each person billed and their applicable hourly rates. Plaintiffs' counsel states that using the lodestar calculation method leads to a total fee amount of $91,225.25.

Plaintiffs' attached to their Motion for Attorneys' Fees, a spreadsheet detailing their costs and also a brochure for Class Action Administration, Inc., the company which they propose to utilize to administer the settlement funds. However, other than listing the number of hours worked and the hourly rate for the paralegals and attorneys, there is no other detailed information regarding how plaintiffs arrived at their fee request.

9

Case 4:10-cv-00775-FJG   Document 78   Filed 11/16/11   Page 9 of 12

In Bruner v. Sprint/United Management.Co., No. 07-2164-KHV, 2009 WL 2058762, (D.Kan. July 14, 2009), the Court expressed concern over settlement agreements where defendants agree not to object to fee requests. The Court stated:

> Such agreements deprive the court of a full record and benefits of the adversary process. They encourage plaintiffs' counsel to maintain inadequate contemporaneous time records and to submit fee requests on records which cannot withstand the adversary process. They promote a lackadaisical approach to fee litigation - regrettably forcing the Court to act as adversary to plaintiffs' counsel in examining fee applications. They can lead to unreasonable fee requests. To top if off, such stipulations have no apparent benefit to plaintiffs. The only beneficiaries are plaintiffs' counsel . . .who would insulate their fee requests from scrutiny through the adversary process.

Id. at *10. The Court in that case stated that "it will skeptically examine and presumably overrule any fee proposal which is presented in a non-adversarial context." Id.

Because plaintiffs' counsel has only provided the Court with the total amount of hours billed and the rate charged for each attorney and paralegal, the Court in unable without further information to determine whether the number of hours spent on this case by the five attorneys and three paralegals was reasonable or necessary. Additionally, the Court notes that plaintiffs' counsel has not shown that the requested hourly rates ($325.00 per hour for attorneys and $100 per hour for paralegals) are either reasonable or customary. Indeed, the Court notes that in one recent opinion, involving several of the same attorneys and paralegals who worked on this case, the Court substantially reduced the hourly billing rates. See Peterson v. Mortgage Sources, Corp., Civil Action No. 08-2660-KHV, 2011 WL 3793963, *11 (D.Kan. Aug. 25, 2011). The Court requires additional information before it can determine what a reasonable award of attorneys' fees and costs would be in this case. Accordingly, plaintiffs' counsel is hereby

10

**ORDERED** to file a Supplemental Motion for Approval of Attorneys' Fees which shall include detailed time records and affidavits attesting to the time spent on this case and the reasonableness of the hourly fees requested. Plaintiffs' counsel shall file this additional information with the Court on or before **November 30, 2011**.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **ORDERS** that:

1. For settlement purposes, the Court certifies this case as a collective action under Section 16(b) of the Fair Labor Standards Act ("FLSA") and appoints Alan Sanderson, Erle Boswell, Donald Cole and David Lanning as class representatives and appoints Brady and Associates as class counsel. The Court therefore **GRANTS** the parties' Joint Motion for Approval of Settlement (Doc. # 73).

2. This Order will be binding on the FLSA Collective Class Members who become FLSA qualified claimants as defined in the Settlement Agreement.

3. The Court finds that the Agreement is fair, reasonable and adequate and is in the best interests of the FLSA Collective Class members and should be and here is approved, in light of the benefits accruing to the FLSA Collective Class members, the substantial discovery and investigation conducted by Class Counsel prior to the proposed settlement and the complexity, risk, expense and possible length of time of continued litigation.

4. The FLSA Notice proposed by the parties fully and accurately informs the FLSA Collective Class members of all material elements of the Litigation and the proposed Agreement.

5. The Court approves the Settlement Agreement and approves the form of the Notice and the distribution to the FLSA Collective Class members of: a) the Notice of Collective Action Settlement; b) the Consent to Join and c) the Release Agreement.

6. Within thirty (30) days after entry of this Order, Class Counsel shall mail such Notice of Collective Action Settlement, Consent to Join, Release Agreement and IRS Form W-9 by First-Class mail to the last known address of each FLSA Collective Class Member. FLSA Collective Class Members must exercise their right to opt-in to the Settlement within sixty (60) days of the mailing or other distribution of the Notice.

7. All FLSA Qualified Claimants shall be permanently barred from commencing, prosecuting or otherwise maintaining in any court or forum any action against the Released Parties regarding any and all FLSA Released Claims relating to this litigation.

8. Without affecting the finality of the FLSA Approval Order, the Court retains exclusive jurisdiction over the consummation, performance, administration, effectuation and enforcement of this FLSA Approval Order, including but not limited to acceptance of the filing of completed Consent to Join forms. Additionally, the Court retains jurisdiction over Unilever, Named Plaintiffs and each FLSA Qualified Claimant for the purpose of enabling them to apply to the Court for such further orders and directions as may be necessary or appropriate for the construction and implementation of the terms of the Agreement and this FLSA Approval Order.

Date: November 16, 2011  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
  Chief United States District Judge